UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ROMERO MONTE THOMAS-EL, | |
| | Civil Action No. 20-10128 |
| Plaintiff, | |
| v. | Bernard A. Friedman |
| | United States District Judge |
| DOUGLAS SMITH, *et al.*, | |
| | David R. Grand |
| Defendants. | United States Magistrate Judge |
| _____/ | |

**REPORT AND RECOMMENDATION TO DENY DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT (ECF No. 46, 79)**

*Pro se* plaintiff Romero M. Thomas-El ("Thomas-El"), who currently is incarcerated at the Michigan Department of Corrections' ("MDOC") Baraga Maximum Correctional Facility ("Baraga"), appears *pro se* in this matter, which he commenced on June 12, 2019. (ECF No. 1.) Thomas-El had previously been held at the MDOC's G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan. He alleges that while there, he filed a grievance in March 2017 against defendant Warden Douglas Smith, regarding Smith's alleged conduct with respect to the handling of one of Thomas-El's prior grievances, and that thereafter, defendants Smith, Jeremy Howard, Michelle Parsons, Kimberly Napier, Shawn Brewer, Anthony Stewart, Robin Gilbert, and Kenneth McKee (collectively, "Defendants") retaliated against him, in violation of the First Amendment, by increasing his security classification, placing him in administrative segregation, and transferring him

to Baraga.[1]

On January 19, 2021, Defendants[2] filed a Motion for Summary Judgment alleging that Thomas-El failed to exhaust his administrative remedies against them. (ECF No. 46.) Thomas-El responded to the motion (ECF No. 62); Defendants filed a reply brief (ECF No. 81); and Thomas-El filed a sur-reply brief. (ECF No. 93).

Pursuant to 28 U.S.C. § 636(b), all pretrial matters in this action have been referred to the undersigned. (ECF No. 18.) Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. LR 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

I.     **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that the Defendants' motions for summary judgment **(ECF No. 46, 79)** be **DENIED.**

II.     **REPORT**

    A.     **Background**

Thomas-El brings this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1, 14.) During the time of the events at issue in this case, Thomas-El resided at two different prisons: JCF and Baraga. *Id.* At JCF, during relevant times, defendants Shawn

---

[1] Thomas-El had attempted to assert many other claims, but his First Amendment retaliation claim is the only one that remains following a ruling by the Honorable Bernard A. Friedman summarily dismissing all of the other claims. (ECF No. 12.)

[2] On April 6, 2021, defendant Robin Gilbert, who had not appeared in this action at the time the motion was filed, joined in this motion. (ECF No. 79.)

Brewer ("Brewer") and Anthony M. Stewart ("Stewart") were employed as wardens, defendant Douglas Smith ("Smith") was employed as a deputy warden, defendant Jeremy Howard ("Howard") was employed as an assistant deputy warden, defendant Michelle L. Parsons ("Parsons") was employed as an ARUS, defendant K. Napier ("Napier") was employed as a warden's administrative assistant. At all relevant times defendant Robin Gilbert ("Gilbert") was employed by the MDOC Correction Facilities Administration (CFA) as a security classification deputy director.

Thomas-El's complaint centers around his allegation that, after he filed a grievance against Smith, the Defendants retaliated against him by increasing his security classification, placing him in administrative segregation, and transferring him to Baraga, a higher-security facility, in April 2017.

**The 1087 Grievance**

On April 22, 2017, Thomas-El filed a grievance related to that alleged retaliation (JCF-17-05-1087-27B) (the "1087 Grievance"), which is the true subject of the Defendants' instant motion.[3]  In the 1087 Grievance, Thomas-El alleged, in relevant part:

> This grievance is being written while my person remains docked and being held at bay . . . awaiting a transfer to Baraga Correctional Facility level five.[4]  This grievance is being written to bring cause to my detention.  And a question of why [] the significant increase in my custody level?  From being a level four prisoner, now a level five prisoner without being afforded due process, or a custody hearing via SCC "Security Classification Committee."  This grievance is being

---

[3] As discussed below, *infra* at 6 n.6, Defendants discuss other grievances that are unrelated to the claims in this case.

[4] The transfer apparently was initiated on April 19, 2017, as Thomas-El indicates on the Step I grievance form that he approached Officer Scott on that date to discuss the matter, and he was told "pack your things and have them brought up front."  (ECF No. 46-3, PageID.646.)

3

> submitted against SCC Board member Deputy Warden D. Smith whom has sole jurisdiction and control over J Unit level four prisoners at [JCF]. . . . My cause is that I have not been issued any class one misconducts being written against me for bad behavior of which could give rise to a security level increase . . . I believe the increase in my custody level from a four to a five is being done in retaliation of and for writing grievances against Deputy Smith . . . Please explain the reason for my security level increase.

(ECF No. 46-3, PageID.646.)

Thomas-El's grievance was received by a Step I grievance respondent on May 5, 2017. (*Id.*, PageID.647.) The respondent rejected the grievance on the ground that "A grievant may not grieve the content of policy or procedure except as it was specifically applied to the grievant. If a CFA prisoner has a concern with the content of a policy or procedure, s/he may direct comments to the Warden's Forum . . ." (*Id.*, PageID.647.) The Step I response indicates that it was returned to Thomas-El on May 5, 2017.

On June 13, 2017, Thomas-El appealed that rejection, reiterating, "My grievance had been written on account that JCF refused me an S.C.C. hearing regarding my security level increase seeing and knowing that I had not received any class one misconducts . . . My security level increase was done in retaliation for bring[ing] to light my differences with staff . . ." (*Id.*, PageID.644.) A Step II grievance respondent responded by essentially ignoring the crux of Thomas-El's grievance – that he was being transferred to an increased security level prison despite the fact that he had not been received any misconducts that would have justified that security level increase, and that the transfer constituted retaliation for him having filed grievances against Smith. Instead, the respondent summarized Thomas-El's grievance as him merely complaining about being "held at bay" for three days

4

"awaiting a transfer to Baraga Correctional Facility Level Five." (*Id.*, PageID.645.) No reference was made to his allegations of retaliation. However, instead of affirming the rejection for the same reason stated in the Step I response, the Step II respondent rejected the grievance appeal as untimely, noting that it was not received until July 5, 2017. (*Id.*) Specifically, the respondent wrote, "the incident cited in the step I complaint initially occurred on 4/20/17 and again cited in the step II appeal. However, appeal was not received by the grievance coordinator until 7/5/17." (*Id.*)

At Step III, Thomas-El challenged the notion that his Step II appeal was tardy, explaining that he filed his Step II appeal "immediately when I received it on June 13, 2017." (*Id.*, PageID.644.) In a Step III grievance decision, the Step II rejection was upheld. (*Id.*, PageID.643.)

**Defendants' Summary Judgment Motion**

In their instant motion, Defendants argue that Thomas-El failed to exhaust his administrative remedies related to both the 1087 Grievance and another grievance [the "0681 Grievance"], though only the former is actually related to the claims in this case:

> Here, Thomas had filed two grievances arising out of JCF relating to the claims raised in his complaint; both of these grievances nam[e] only Smith as an individual being grieved at Step I[5] and neither exhausted any claims against Smith or any of the other co-MDOC Defendants. The [0681 Grievance] was the protected conduct for which MDOC Defendants retaliated against him. [] As such, [the 0681 Grievance] could not exhaust any claims against Smith or any other

---

[5] This statement is inaccurate, as the 0681 Grievance does not relate to Smith, though apparently, a different grievance also with "0681" as part of its identifier does relate to Smith. (ECF No. 14, PageID.295; ECF No. 46-3, PageID.651.)

5

> MDOC Defendants.[6] The [1087 Grievance] contested the increase of his security classification, but this grievance was rejected at Step I and Step II for separate reasons: at Step I, because it grieved the contents of a policy or procedure; and at Step II, because it was untimely. [] Because [the 1087 Grievance] was rejected, it did not exhaust any claims against Smith or any other MDOC Defendants.

(ECF No. 46, PageID.617.)

Thus, Defendants conclude, "Because [the 1087 Grievance] was rejected, it did not exhaust any claims against Smith or any other MDOC Defendants." (ECF No. 46, PageID.617.)[7]

### B. Standard of Review

#### 1. *Summary Judgment*

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-

---

[6] Thomas-El disputes that the 0681 Grievance constitutes the "protected conduct" giving rise to his retaliation claim. (ECF No. 62, PageID.836; *see also supra* at 5, n.5.) Indeed, as Thomas-El indicates, the 0681 Grievance appears to relate to incidents in which Thomas-El believes he was treated unfairly by a guard whose last name is Lamb. (ECF No. 46-3, PageID.651.) At any rate, because Thomas-El does not contend that the 0681 Grievance exhausts any of the claims he raises in this case, the Court need not consider it further.

[7] Defendants did not actually argue that because Thomas-El named only Smith in the 1087 Grievance, that Grievance could not have exhausted claims against any of the other Defendants.

moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

  **C.** **Analysis**

In their motion, the Defendants argue that they are entitled to summary judgment on Thomas-El's claims against them because Thomas-El failed to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF Nos. 64, 79.) For the reasons set forth below, the Court disagrees.

    *i.* *The PLRA's Exhaustion Requirement*

Under the PLRA, a prisoner may not bring an action "under [§ 1983] or any other

7

Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being hauled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires *proper* exhaustion." *Id.* at 93 (emphasis added). Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

                *ii.*      *The MDOC's Exhaustion Procedures*

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (ECF No. 46-2.) A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.*, ¶ B.) The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id.*, ¶¶ P, V.) "Dates, times,

8

places, and names of all those involved in the issue being grieved are to be included." (*Id.*, ¶ R). A grievance respondent must provide a response, the due date for which is "15 days after receipt of the grievance . . ." (*Id.*, ¶ X.) If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id.*, ¶ BB.) If the prisoner is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id.*, ¶ FF.) Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps. (*Id.*, ¶ B.) The Policy also provides, "A grievant may not grieve the <u>content</u> of policy or procedure except as it was specifically applied to the grievant. If a CFA prisoner has a concern with the content of a policy or procedure, s/he may direct comments to the Warden's Forum as provided in PD 04.01.150 'Prisoner Housing Unit Representatives/Warden's Forum'." (*Id.*, ¶F1) (emphasis in original).

> iii. The Mere Fact that the 1087 Grievance Was Rejected Does Not Mean Thomas-El Failed to Exhaust His Administrative Remedies

As noted above, one of Defendants' arguments is that, "Because [the 1087 Grievance] was rejected, it did not exhaust any claims against Smith or any other MDOC Defendants." (ECF No. 46, PageID.617.) This argument lacks merit. A defendant cannot show a failure to exhaust simply by showing a grievance was "rejected." In *Johannes v. Washington*, No. 14-11691, 2016 WL 1253266, at *6 (E.D. Mich., March 31, 2006), the court was addressing an argument that, because a grievance had been rejected as

9

"duplicative" of a prior grievance, the inmate had not exhausted the second one. The court rejected that argument, explaining, "If this were the case, a prisoner would be barred from filing suit even if the grievance screener incorrectly rejects his grievance as duplicative. Thus, to carry their summary-judgment burden, Defendants must compare the issues grieved in the first grievance to those grieved in the [] allegedly-duplicate grievances and show that every reasonable jury would think the rejections were proper." *See id*.

In sum, while a properly-rejected grievance *may* mean that the inmate failed to exhaust claims related to that grievance, the mere fact that the grievance was rejected is not a sufficient basis to reach that conclusion. Instead, the Court must examine the arguments and evidence regarding the propriety of the rejections. *Johannes*, 2016 WL 1253266, at *6.

> iv. *Defendants' Argument that Thomas-El's Step I Grievance Was Properly Rejected because it Grieved the Contents of a Policy or Procedure Lacks Merit*

Defendants' first argument, that the 1087 Grievance was properly rejected at Step I because it grieved the contents of a policy or procedure lacks merit. First, as noted above, the Policy does not include a wholesale prohibition against grieving "the content of policy or procedure," but rather, limits such grievances to instances in which the policy or procedure "was specifically applied to the grievant." To the extent Thomas-El's 1087 Grievance can even be said to relate to a "policy or procedure," it would only be as it was applied *to him*. Moreover, a fair characterization of the 1087 Grievance is that rather than grieving a "policy or procedure," it grieved alleged retaliation and the underlying factual

10

basis for the increase to Thomas-El's security classification and resulting transfer.[8] For these reasons, the Step I rejection of the 1087 Grievance is not a basis for finding that it failed to exhaust the claims raised in Thomas-El's complaint.

> v. *Thomas-El has Raised a Dispute of Material Fact as to the Timeliness of His 1087 Grievance at Step II*

As discussed above, Thomas-El's Step II appeal was rejected as untimely. Defendants now argue that due to that untimeliness, Thomas-El failed to properly exhaust the 1087 Grievance. Thomas-El makes two arguments in response. First, he argues that the untimeliness was the fault of MDOC who failed to deliver the decision on his Step I appeal in a timely fashion. Second, he argues that because the MDOC addressed his complaints on the merits, the MDOC failed to enforce its own procedural requirements regarding timely submission of grievance appeals and thus this court should also decline to enforce those requirements. Because the Court finds a material dispute of fact as to the timeliness of Thomas-El's Step II appeal, it need only address that issue.

---

[8] Defendants submitted a reply brief along with the affidavit of Christine McCumber-Hemry, who at all relevant times, was a grievance coordinator at JCF. (ECF No. 81-2.) McCumber-Hemry avers that because the 1087 Grievance "concerned [Thomas-El's] transfer to a facility which more accurately reflected his security level . . . I rejected it as non-grievable." (*Id.*, PageID.1091.) First, Defendants' initial brief was extremely bare-bones on this issue, and it is not proper to put this type of evidence and argument into a reply brief in the first instance. *Peake v. Nat'l City Bank of Michigan*, No. 05-72520, 2007 WL 951417, at *2-3 (E.D. Mich. Mar. 27, 2007) ("An argument raised for the first time in a reply brief is not to be considered by the court."). Second, it does not change the fact that rather than grieving a "policy," Thomas-El grieved alleged "retaliation" based on his filing of a prior grievance. As Judge Friedman explained early on in this case, "Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution." (ECF No. 12, PageID.195.) Defendants cannot extinguish Thomas-El's *retaliation* claim by, during the grievance process, characterizing it as a challenge to a "policy."

11

Defendants rely principally on McCumber-Hemry's affidavit to show that Thomas-El's submission of his Step II appeal was untimely. McCumber-Hemry states that she rejected Thomas-El's 1087 Grievance at Step I "because it concerned a policy or procedure," an issue the Court has already addressed above. (ECF No. 81-2, PageID.1090.) She then returned the rejection at Step I to Baraga, where Thomas-El was housed at the time, on May 5, 2017. Under those facts, Thomas-El had until May 22, 2021, to return a Step II grievance appeal. *Id*. at PageID.1091. McCumber-Hemry indicated that she did not receive Thomas-El's Step II appeal request until May 31, 2017; that she wrote "untimely request" on the request and sent him a Step II appeal on May 31, 2017; that she did not receive Thomas-El's Step II appeal until July 5, 2017; that this 5-week delay beyond the May 22 date was far greater than could be explained by a delay in mailing; that Thomas-El did not otherwise justify his delay; and that she thus rejected Thomas-El's Step II appeal as untimely. (*Id*.)

Thomas-El rebuts these averments, arguing that he received the Step II grievance request form on May 16, 2017,[9] and that he timely returned the form on May 25, 2017. (ECF No. 14, PageID.248; ECF No. 93, PageID.1387-88.) Thomas-El further avers that

---

[9] The only hard evidence regarding the dates at which Thomas-El received the Step I decision and submitted his appeals are in the forms attached by Thomas-El himself. However, these documents only establish the time at which the MDOC placed documents in the mail or received a response from Thomas-El. They do not establish when Thomas-El himself actually received the documents or put them in the mail to return to the MDOC. For instance, the form for the decision on Thomas-El's Step I grievance decision states that the grievance was returned on May 5, 2017, but it does not state that the date of return is also the date it was received. (ECF No. 14, PageID.280.)

he did not receive the Step II appeal form until June 13, 2017, and that he sent the completed form back on the same day. *Id*. at 1388.

Defendants do not argue that even if the Court accepts Thomas-El's timeline, he still would not have met the procedural requirements of the grievance process. Instead, Defendants rest their argument on accepting the truth of the timeline in McCumber-Hemry's testimony over the truth of the timeline stated by Thomas-El. However, as explained above, in considering Defendants' summary judgment motion, the Court must resolve all factual disputes in the favor of the non-moving party, here Thomas-El. Thus, the Court must accept his timeline for the purpose of deciding Defendants' instant motion. Again, doing so leads to the conclusion that Thomas-El at least raised a question of fact about the timeliness of his Step II appeal, and, therefore, as to whether he properly exhausted the 1087 Grievance.

> *vi. Thomas-El's Failure to Specifically Name Individuals Other than Defendant Smith Does Not Mean He Did Not Exhaust His Administrative Remedies as to the Other Defendants*

It is undisputed that the 1087 Grievance specifically mentions only Defendant Smith. As noted above, however, in their summary judgment motion, the Defendants other than Smith did not ask the Court to find that they were entitled to summary judgment on this basis. Rather, they did so in their reply brief. This is improper, and alone a reason for the Court to deny the requested relief. *Peake*, 2007 WL 951417, at *2-3 ("An argument raised for the first time in a reply brief is not to be considered by the court."). Moreover, even if the Court were to consider the issue, it would find that in this particular case,

13

Thomas-El's failure to specifically name the Defendants other than Smith does not mean he failed to exhaust his related claims as to them.

"The purpose of a grievance is to give prison officials fair notice of the conduct that underlies the Plaintiff's legal claim." *Salami v. Trumbly*, 2020 WL 6389839, at *3 (E.D. Mich. Sept. 4, 2020) (citing *Jones v. Bock*, 549 U.S. at 219 ("'We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation' ") (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)). Reviewing the history of the 1087 Grievance makes clear that Thomas-El put the MDOC on notice of the specific conduct he was complaining about, and that the grievance respondent chose to mischaracterize that complaint. As discussed above, Thomas-El made clear in the 1087 Grievance that he was misclassified as a "level five" inmate and that the decision to transfer him to Baraga was done in retaliation for his having filed a grievance against Warden Smith. He also specifically identified the "Security Classification Committee" as being involved, and in his complaint, he indicates that Defendants Smith, Howard, Napier, Parsons, and Brewer are members of that Committee. (ECF No. 14, PageID.239-240.) The MDOC therefore had ample opportunity to investigate who made the allegedly improper classification and transfer determinations. Indeed, considering that Thomas-El submitted his 1087 Grievance within days after being advised he was being transferred, and while he was in a holding cell awaiting the transfer, it is unclear how he could have known the specific individuals involved in the underlying allegedly wrongful conduct. Accordingly, the fact that Thomas-El's 1087 Grievance does

not specifically identify the Defendants other than Smith does not mean he failed to exhaust his related claims as to them. *See Sedore v. Campbell*, 2021 WL 405987 (E.D. Mich. Feb. 5, 2021) ("[F]ailure to name an individual later sued is not necessarily fatal to a prisoner's suit so long as prison officials had fair notice of the claim raised against the defendants such that there is an opportunity to resolve it."); *Cary v. Washington*, 2018 WL 5117812, at *6-7 (E.D. Mich. July 31, 2018), report and recommendation adopted, 2018 WL 4501480 (E.D. Mich. Sept. 20, 2018) ("Since the Supreme Court decided *Jones v. Bock*, the Sixth Circuit has stated that courts ought not impose severe technical requirements on prisoners who comply with the spirit and purpose of the administrative exhaustion rules."); *Mattox v. Edelman*, 851 F.3d 583, 591 (6th Cir. 2017) ("We have … explained that the purpose of the PLRA's exhaustion requirement 'is to allow prison officials a fair opportunity to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court.'") (quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010)).

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' motion for summary judgment **(ECF No. 46, 79)** be **DENIED**.

Dated: June 30, 2021  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 30, 2021.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS

Case Manager