UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROMERO M. THOMAS-EL, #684159,

        Plaintiff,                              Civil Action No. 20-cv-10128
                                                        HON. BERNARD A. FRIEDMAN

vs.

DOUGLAS SMITH, *et al.*,

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR ACCEPTANCE OF DELAYED COURT FILINGS**

I.    Introduction

Romero Thomas-El is incarcerated with the Michigan Department of Corrections. He commenced this *pro se* 42 U.S.C. § 1983 action against Deputy Warden Douglas Smith, Acting Deputy Warden Jeremy Howard, Assistant Resident Unit Supervisor Michelle Parsons, and Classification Specialist Robin Gilbert (the "MDOC Employees") alleging, among other things, that they violated the First Amendment to the United States Constitution when they retaliated against him for filing a prison grievance against Smith.

Before the Court is the MDOC Employees' motion for summary judgment. (ECF No. 204). Thomas-El responded. (ECF Nos. 208, 210). The MDOC

Employees filed a reply. (ECF No. 212). Thomas-El filed a sur-reply. (ECF No. 213).[1] Also before the Court is Thomas-El's unopposed motion for acceptance of delayed court filings in response to the summary judgment motion. (ECF No. 211). The Court will decide the motions without oral argument pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, the Court shall grant both motions.

II.   Background

   A.   *Factual History*

Thomas-El began serving his criminal sentences with MDOC in 2014. (ECF No. 204-2, PageID.3089, ¶ 3; PageID.3096). MDOC housed Thomas-El at no less than eight correctional facilities since then, all of them with either Level IV or Level V security protocols.[2] (ECF No. 204-2, PageID.3096). Thomas-El started his incarceration at the G. Robert Cotton Correctional Facility, a Level IV facility, in August 2016. (*Id.*). Although MDOC scored his security classification at Level V immediately before his arrival, prison officials lowered this designation to Level IV on the ground that Thomas-El could "be managed in [a] reduced custody

---

[1] Thomas-El did not move for leave to file a sur-reply. Because he is litigating this case without the assistance of counsel, the Court will consider it anyway. *See Key v. Shelby County*, 551 F. App'x 262, 264 (6th Cir. 2014) (holding that the decision whether to grant a sur-reply falls within the district court's discretion).

[2] MDOC correctional facilities are classified at Levels I through V. "The security level is based on the level of security and staff supervision the facility provides. Level I is the least secure level and Level V is the most secure." MDOC Policy Directive, Prisoner Placement and Transfer, 05.01.140(A) (effective Aug. 1, 2022).

security level." (*Id.*, PageID.3097). The G. Robert Cotton Correctional Facility does not house Level V inmates. (*Id.*, PageID.3091, ¶ 12).

On February 21, 2017, Thomas-El filed a grievance related to the partial discontinuance of his law library access. (ECF No. 14, PageID.231-33, ¶¶ 15-28; PageID.306). Deputy Warden Smith responded to the grievance in writing on March 2, noting that "[p]risoner Thomas was taken off his Friday law library call-out for lack of use on 1/28/2017. He was back on the call-out for Fridays on 2/15/17." (*Id.*, PageID.307). Thomas-El attested that Smith also met with him personally on March 7 and threatened to place him in administrative segregation when he refused to resolve the grievance. (*Id.*, PageID.234-37, ¶¶ 34-50; ECF No. 14-1, PageID.330, ¶ 2; ECF No. 204-4, PageID.3130, L:10-20).

On March 12, 2017, Thomas-El filed a second grievance, this time against Smith for failing to provide him with an original copy of the February 21 grievance. (ECF No. 14, PageID.295). This second grievance did not mention that Smith had met with Thomas-El in-person on March 7 or that Smith had threatened him with placement in administrative segregation. (*Id.*). Prison officials responded to the grievance in writing on March 17, indicating that Smith had provided Thomas-El with three copies of the February 21 grievance after the original copy had been lost. (*Id.*, PageID.296). The response concluded that the missing original

3

copy would not hamper Thomas-El from appealing the February 21 grievance. (*Id.*).

The following month, prison officials transferred Thomas-El from the G. Robert Cotton Correctional Facility to the Baraga Maximum Correctional Facility – a Level V facility. (ECF No. 204-2, PageID.3089, ¶ 6; ECF No. 204-4, PageID.3158, L:13-21). The MDOC Employees maintain that Thomas-El was transferred to make room for another prisoner with an upcoming discharge from MDOC custody. (*Id.*, PageID.3089, ¶ 6; PageID.3103-05; ECF No. 204-5, PageID.3205, ¶ 3; PageID.3207-08).

The involvement of the remaining MDOC Employees at this juncture is entirely documentary. Assistant Resident Unit Supervisor Parsons reviewed Thomas-El's security classification status prior to the transfer. (ECF No. 14-1, PageID.333; ECF No. 204-3, PageID.3107-08 ¶¶ 3, 4). Parsons scored his security classification at Level V, but she did not lower this designation to Level IV (as prison officials had previously) because Thomas-El incurred four Class I-II misconduct tickets that disqualified him from being managed at a reduced custody security level. (ECF No. 204-2, PageID.3090, ¶¶ 7-8).[3] Acting Deputy Warden

---

[3] Thomas-El contests the number of misconduct tickets he received and their severity level. (ECF No. 14, PageID.254; ECF No. 208, PageID.3256, 3286-88; ECF No. 204-4, PageID.3144, L:19-25; PageID.3145, L:1-21). Even assuming the worst, though – that Parsons intentionally misrepresented this information on the

Howard approved the Level V security designation and acknowledged being the sole and final decisionmaker who approved transferring Thomas-El to a Level V facility. (ECF No. 14-1, PageID.333; ECF No. 204-2, PageID.3091, ¶ 14). And lastly, Classification Specialist Gilbert signed the order transferring Thomas-El to the Baraga Correctional Facility. (ECF No. 204-2, PageID.3103, 3105; ECF No. 204-5, PageID.3206, ¶ 4).

### B. Procedural History

Thomas-El sued twelve prison employees initially – in both their official and individual capacities – for procedural due process violations (Counts I and IV), First Amendment retaliation (Count III), and violations of state law (Count II). (ECF No. 14, PageID.217-20, 277, 290-91, 330-31). The Court granted him leave to proceed without prepaying the filing fee. (ECF No. 8). And it reviewed the amended complaint on its own pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a)-(b). (ECF No. 12, PageID.191).

In its April 16, 2020 opinion and order, the Court (1) dismissed four prison employees outright, (2) declined to exercise supplemental jurisdiction over the state law claims, and (3) dismissed all the federal claims with the exception of the First Amendment retaliation claim asserted against the remaining eight employees

---

security review form – Thomas-El still cannot demonstrate that Parsons would not have lied but for his grievance against Smith. *See infra* Section IV. B.

in their individual capacities. (ECF No. 12, PageID.200). The parties later stipulated to dismiss four of these employees without prejudice. (ECF No. 158).

The sole remaining cause of action is the First Amendment retaliation claim alleged against the MDOC Employees in their individual capacities (Count III). They now move for summary judgment on this last cause of action. (ECF No. 204).

III. <u>Legal Standards</u>

A moving party is entitled to summary judgment where the "materials in the record" do not establish the presence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c). All the evidence, along with all reasonable inferences, must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

IV. <u>Analysis</u>

    A. *First Amendment Retaliation Overview*

The United States Sixth Circuit Court of Appeals initially recognized a cause of action for First Amendment retaliation in *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (en banc). The cause of action comprises three elements. Plaintiffs must show (1) they engaged in protected conduct, (2) they suffered an adverse action that would deter someone of ordinary firmness from continuing to engage in

that conduct, and (3) a causal connection between the protected conduct and the adverse action(s). *Id.* at 394.

If this prima facie showing is met, the burden shifts to the defendants to establish that they "would have taken the same action even in the absence of the protected conduct." *Wenk v. O'Reilly*, 783 F.3d 585, 593 (6th Cir. 2015) (quotation omitted). Unlike the *McDonnell Douglas* burden-shifting framework for employment discrimination cases, "the burden does not shift back to a plaintiff to show pretext in First Amendment retaliation claims." *Id.* at 594.

### B. Thomas-El Cannot Establish But-For Causation

Assuming the grievance against Smith constitutes protected conduct, and that Thomas-El's increased security level designation and subsequent transfer to the Baraga Correctional Facility qualify as adverse actions, the absence of any evidence pointing to a causal connection between the grievance, the heightened security level, and the eventual transfer scuttles the First Amendment retaliation claim. *See Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) ("[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."); *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010) ("Being threatened with a transfer to a more restrictive living environment with fewer privileges" is an adverse action); *King v. Zamiara*, 150 F. App'x 485, 494 (6th Cir. 2005) (holding that increasing a prisoner's security level is an adverse action).

7

The causal standard for First Amendment retaliation claims is a high threshold. Juxtaposing evidence that an official acted with a retaliatory motive and that the plaintiff was injured is not enough. Borrowing the Supreme Court's formulation – "the motive must *cause* the injury." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (emphasis in original). So the plaintiff must demonstrate that the protected conduct is the "but-for" cause of the adverse action, "meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.*; *see also Winston v. Fuchs*, 837 F. App'x 402, 404 (7th Cir. 2020) (holding that inmate failed to marshal "enough evidence for a reasonable jury to find that his grievance was the but-for cause of his discipline.").

Nothing in this record indicates that Parsons and Gilbert ever knew about the grievance against Smith. In fact, they irrefutably disclaim any awareness whatsoever. (ECF No. 204-3, PageID.3108, ¶ 6; ECF No. 204-5, PageID.3206, ¶ 4). And without knowledge of the grievance, there is no way to causally link it to Thomas El's increased security level and transfer. *See Thaddeus-X*, 175 F.3d at 387 n.3 (stating that "the defendant must have known about the protected activity in order for it to have motivated the adverse action."); *see also Edgar v. City of Collierville*, 160 F. App'x 440, 442-43 (6th Cir. 2005) (affirming dismissal of First Amendment retaliation claim where decisionmaker "was not aware of Edgar's earlier union activities."); *Van Huss v. Shoffner*, 81 F. App'x 17, 23 (6th Cir. 2003)

8

("Knowledge is a logical prerequisite to finding that plaintiffs' termination was substantially motivated by their engagement in constitutionally protected activity. After all, a defendant cannot terminate employees due to the exercise of their First Amendment rights in the absence of knowledge that they were doing any such thing.").

The most Thomas-El can show is that Howard received an April 3, 2017 memorandum from Inspector Scott Bailey indicating that Thomas-El filed a grievance in March 2017. (ECF No. 196-3, PageID.2866). But the memorandum omits any mention about the grievance's subject matter, the respondent's identity, or whether the grievance was resolved. Even if a reasonable jury could somehow infer that Howard read the memorandum and became aware that Thomas-El directed the grievance against Smith, Thomas-El fails to raise a genuine factual question as to whether Howard would not have increased his security level and approved his transfer to a Level V facility except for the grievance. *See Nieves*, 139 S. Ct. at 1722.

That leaves Smith. Aside from testifying that Smith threatened to place him in administrative segregation (ECF No. 14, PageID.237, ¶¶ 49-50, PageID.330, ¶¶ 2-3; ECF No. 204-4, PageID.3175, L:6-9, PageID.3177, L:8-10), Thomas-El expressly limits his retaliation claim against Smith to his increased security level and eventual transfer to the Baraga Correctional Facility. (ECF No. 204-4,

9

PageID.3182, L:17-19). But there is no evidence that Smith played any role in altering Thomas-El's security classification or transferring him to Baraga. And Thomas-El left unrebutted the remaining MDOC Employees' statements that they never spoke with Smith about increasing Thomas-El's security level or transferring him. (ECF No. 204-2, PageID.3090, ¶ 10; ECF No. 204-3, PageID.3108, ¶ 6; ECF No. 204-5, PageID.3206, ¶ 4). So the but-for causation tying Smith's purported retaliatory motive to the adverse actions is lacking as well.

Because Thomas-El fails to raise a genuine factual question as to whether the MDOC Employees retaliated against him for filing his grievance against Smith, the First Amendment retaliation claim cannot withstand summary judgment.

C. *Qualified Immunity*

As a back-stop measure, the MDOC Employees assert their entitlement to qualified immunity in the event the Court would find them liable for First Amendment retaliation. (ECF No. 204, PageID.3081-83).

Qualified immunity shields government officials from monetary awards when they are sued in their individual capacities. *Haddad v. Gregg*, 910 F.3d 237, 253 (6th Cir. 2018). The affirmative defense is a two-part inquiry that asks (1) whether, considering the evidence in a light most favorable to plaintiff, a constitutional right has been violated, and (2) whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Smith v. City of Troy*, 874

F.3d 938, 944 (6th Cir. 2017).  Courts have the discretion to address the two parts of the qualified immunity analysis in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  If a reasonable jury could not conclude from the evidence that officials violated a constitutional right, the inquiry terminates and the officials are entitled to qualified immunity. *Smith*, 874 F.3d at 944.

Since the Court already decided that the MDOC Employees did not retaliate against Thomas-El in violation of the First Amendment, they are entitled to qualified immunity.  Addressing whether Thomas-El possessed a clearly established right under the circumstances is, therefore, unnecessary.

Accordingly,

IT IS ORDERED that the MDOC Employees' motion for summary judgment (ECF No. 204) is granted.

IT IS FURTHER ORDERED that Thomas-El's motion for acceptance of delayed court filings (ECF No. 211) is granted.

Dated: March 2, 2023  
    Detroit, Michigan

s/Bernard A. Friedman  
Bernard A. Friedman  
Senior United States District Judge

11

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on March 2, 2023.

| | |
|---|---|
| **Romero Monte Thomas** #684159<br>OAKS CORRECTIONAL FACILITY<br>1500 CABERFAE HIGHWAY<br>MANISTEE, MI 49660 | s/Johnetta M. Curry-Williams<br>Case Manager |