UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROMERO MONTE THOMAS-EL,

                Plaintiff,

v.

DOUGLAS SMITH, *et al.*,

                Defendants.
_____/

Civil Action No. 20-10128

F. Kay Behm
United States District Judge

David R. Grand
United States Magistrate Judge

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 255)**

This is a prisoner civil rights case brought by *pro se* plaintiff Romero M. Thomas-El ("Thomas-El") against Michigan Department of Corrections' ("MDOC") employees Douglas Smith, Jeremy Howard, Michelle L. Parsons, V. McCabe, Kimberly Napier, Shawn Brewer, Anthony Stewart, Robin Gilbert, Kenneth T. McKee, and Lloyd Rapelje (collectively, "Defendants"). The case is now on remand from the Sixth Circuit on one claim only – a due process claim as it relates to Thomas-El's alleged indefinite placement in administrative segregation at the Baraga Correctional Facility ("AMF").[1]

As brief background, on April 16, 2020, the Court screened Thomas-El's amended

---

[1] During this case's initial screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), the Court dismissed Thomas-El's administrative segregation due process claim and all of his other federal claims except for his First Amendment retaliation claim, and dismissed without prejudice his state law claims. (ECF No. 12). After discovery on the First Amendment retaliation claim, the remaining defendants moved for summary judgment, which the Court granted. (ECF No. 217). On appeal, the Sixth Circuit upheld the dismissal of Thomas-El's claims except his administrative segregation due process claim, and remanded the case to this Court for further proceedings on that claim only. (ECF No. 247). Accordingly, this Report and Recommendation will limit its focus to Thomas-El's administrative segregation due process claim.

complaint pursuant to §§ 1915(e)(2)(B) and 1915A(b)(1), and dismissed his due process claims, explaining:

> [Thomas-El] alleges that defendants Smith, Howard, Parsons, McCabe, Napier, Brewer, Stewart, Gilbert, and McKee violated his procedural due process rights because he was given a Level 5 security classification, transferred to another prison, and put in administrative segregation without an opportunity to be present and submit argument at an administrative hearing.
>
> The Federal Due Process Clause "protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). A prisoner does not have a constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228–29 (1976); *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003). A prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Harbin–Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005).
>
> Likewise, confinement in segregation generally does not constitute an "atypical and significant" hardship, *see, e.g., Hudson v. McMillian*, 503 U.S. 1, 9 (1992), except in "extreme circumstances, such as when the prisoner's complaint alleges that he is subject to an indefinite administrative segregation" or that such confinement was excessively long in duration without justification. *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010); *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003). In this case, plaintiff does not allege that he is being held in administrative segregation indefinitely or that he was held in administrative segregation for an excessively long period of time without justification.
>
> In *Rimmer–Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995), the Sixth Circuit reviewed a Michigan prisoner's claim that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and a hearing before being placed in administrative segregation. The court held that regardless of the mandatory language

> of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim*, 461 U.S. at 250. Because plaintiff does not have a constitutionally protected liberty interest in being incarcerated in a particular prison, being held in a particular security classification, or being free from placement in administrative segregation, he fails to state a viable federal procedural due process claim.

(ECF No. 12, PageID.194).

After the case proceeded through discovery and summary judgment was granted in the Defendants' favor on Thomas-El's First Amendment retaliation claim, Thomas-El appealed to the Sixth Circuit, arguing, in relevant part, that the Court had erred in dismissing his administrative segregation due process claim on initial screening. On appeal, the Sixth Circuit summarized the relevant allegations in Thomas-El's complaint as to his due process claim, as follows:

> Thomas-El's allegations center on his time incarcerated at the G. Robert Cotton Correctional Facility (JCF) and the Baraga Maximum Correctional Facility (AMF). In February 2017, while incarcerated at JCF with a Level IV security classification, Thomas-El filed a grievance complaining that his library access had been discontinued. Smith responded, writing that "Thomas[-El] was taken off his Friday law library callout for lack of use on 1/28/2017. He was back on the call-out for Fridays on 2/15/17.
>
> On March 12, 2017, Thomas-El filed another grievance, complaining that Smith failed to give him an original copy of his February grievance. In response, prison officials noted that Smith had provided Thomas-El with three copies of his February grievance after the original copy had been lost.
>
> On April 24, 2017, MDOC transferred Thomas-El from JCF to AMF. Howard averred that Thomas-El was transferred "to make room at JCF for an incoming prisoner with an upcoming discharge from MDOC

3

custody, Watts #827604." Thomas-El's security classification, upon his arrival at AMF, was set at Level V in view of several misconduct tickets, as well as a determination that Thomas-El "could not be managed at a reduced custody level." Parsons reviewed Thomas-El's Level V security classification, and Howard approved it. Gilbert signed the order transferring Thomas-El to AMF.

* * * * * * *

Thomas-El's amended complaint alleged that Smith, Howard, Parsons, McCabe, Napier, Brewer, Stewart, Gilbert, McKee, and Rapelje violated his right to procedural due process when they, in violation of MDOC policy, deprived him of an opportunity to be present at an administrative hearing, following which he was transferred to another prison, where he was given a "Level V security classification to administrative segregation."

(ECF No. 247, PageID.3772-74).

The Sixth Circuit vacated and remanded the dismissal of Thomas-El's due process claim related to his placement in administrative segregation, holding that, liberally construed, his complaint had sufficiently alleged a due process claim based on his "indefinite placement" in administrative segregation:

> Upon review of Thomas-El's amended complaint, we conclude that the district court prematurely dismissed Thomas-El's due process claim predicated upon his continued confinement in administrative segregation. Thomas-El's amended complaint alleged that he was placed in "level five administrative segregation" at AMF on or around April 20, 2017, and he maintains that placement at Level V at AMF is "indefinite." Indeed, liberally construed, Thomas-El's amended complaint, filed in March 2020, indicated that he was in administrative segregation at that time, that he had been in administrative segregation for approximately three years,[2] and that he had allegedly been placed

---

[2] Thomas-El's amended complaint did not explicitly allege how long he was in administrative segregation. Although he filed an "objection" to the district court's partial dismissal order, alleging that he has been in administrative segregation for 1,095 days "and counting," he did not raise that allegation in his amended complaint—the only filing that the district court could consider

4

> there without a proper hearing (i.e., one at which he could be present). Thomas-El further alleged that placement in administrative segregation at AMF is an "*indefinite* placement until all administrative holds are removed by [a senior MDOC official]." We have held that confinement in administrative segregation may qualify as an "atypical and significant hardship" where "the prisoner's complaint alleged that he is subject to *indefinite* administrative segregation." *Joseph v. Curtin*, 410 F. App9x 865, 868 (6th Cir. 2010) (quoting *Harden-Bey v. Rutter*, 524 F.3d 789, 794-95 (6th Cir. 2008) (finding that a three-year confinement in administrative segregation with no anticipated end date implicated a protected liberty interest)).
>
> However, Thomas-El's transfer to AMF does not implicate a protected liberty interest. *See Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995). Nor does his security reclassification. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005). And even if state-mandated procedural requirements exist regarding a prisoner's classification and placement, as Thomas-El alleged, those requirements do not, by themselves, establish protected liberty interests. *See Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983); *Jergens v. Ohio Dep't of Rehab. & Corr. Adult Parole Auth.*, 492 F. App'x 567, 571 (6th Cir. 2012).
>
> To summarize: read liberally, Thomas-El's complaint contains sufficient facts to state a claim that his prolonged and indefinite placement in administrative segregation is atypical and significant so as to confer upon him a liberty interest, and the district court therefore erred in dismissing this portion of his due process claim. Thomas-El, however, failed to state a due process claim premised on his transfer, security reclassification, and state policies, and so those portions of his due process claim were properly dismissed.

(*Id.*, PageID.3773-75) (footnote in original).

After the case was remanded for further proceedings on Thomas-El's due process claim related to his prolonged and indefinite placement in administrative segregation, on August 8, 2024, Defendants filed a motion for summary judgment on the basis of

---

at the dismissal stage. *See Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023). So we, too, decline to consider that allegation. *See id.*

5

exhaustion that is the subject of this Report and Recommendation. (ECF No. 255). Thomas-El filed a response, Defendants filed a reply, and Thomas-El filed a sur-reply. (ECF Nos. 257, 258, 259).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

## I.     RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 255)** be **GRANTED**.

## II.    REPORT

### A.     Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

**C.  Analysis**

In their motion, Defendants argue that summary judgment is warranted on Thomas-El's administrative segregation due process claim against them because Thomas-El failed to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF No. 255). The Court agrees that Defendants are entitled to summary judgment.

***The PLRA's Exhaustion Requirement***

Under the PLRA, a prisoner may not bring an action, "under [§ 1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85

(2006).  This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court.  *See Woodford*, 548 U.S. at 89.  The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93.  Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules."  *Id.* at 90.  In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself."  *Jones v. Bock*, 549 U.S. 199, 200 (2007).  Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof.  *See id.* at 216; *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019).

### *The MDOC's Exhaustion Procedures*

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200.  In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (ECF No. 46-2, PageID.623).  According to the Policy, "[g]rievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures." (*Id.*, at ¶ E).

A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file

8

a lawsuit challenging the alleged unlawful conduct.  (*Id.* at ¶ B).  The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance.  (*Id*. at ¶¶ P, V).  If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due.  (*Id*. at ¶ BB).  If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III.  (*Id*. at ¶ FF).

> ***Thomas-El Fails to Raise a Material Question of Fact as to Whether He Properly Exhausted a Grievance Raising a Due Process Claim Based on His Indefinite Placement in Administrative Segregation***

In their motion, Defendants argue that none of Thomas-El's grievances substantively challenged his alleged continued or indefinite confinement in administrative segregation, and so he failed to properly exhaust a due process claim related to his placement in segregation.  (ECF No. 255, PageID.3811-12).[3]

In his response, Thomas-El contends that the relevant grievance at issue is JCF-17-05-1087-27B (the "1087 Grievance"), and that "none of [the other grievances] are relevant to this cause of action, and there is no need to further address them."  (ECF No. 257, PageID.3830).  As to the 1087 Grievance, Thomas-El argues that it "clearly says that the

---

[3] Defendants also argue that Thomas-El failed to name any of the Defendants other than Smith in any grievances during the relevant time period.  Because the Court finds that Thomas-El failed to raise a genuine dispute of material fact that he filed any grievance raising a substantive challenge to his indefinite or prolonged confinement in administrative segregation, it need not address Defendants' other argument as to his failure to specifically name the individuals involved.

9

grievance was 'being written to bring cause into my detention with emphasis on the word detention, and a question for the significant increase in my custody level?" and that he went "[f]rom being a level IV prisoner, now a level V prisoner without being afforded 'Due Process' . . . [o]r a custody hearing via S.C.C. 'Security Classification Committee.'" (ECF No. 257, PageID.3830-31).

A review of the 1087 Grievance reflects that the grievance was filed at Step I on April 22, 2017, and complained of an incident that occurred on April 20, 2017, which alleged, in full, that:

> This grievance is being written while my person remains docked and being held at bay while at URF Chippewa Correctional Facility due to a[] transportation issue, or what is being called a layover during the time duration of 4/20/17 to 4/24/17; Awaiting a transfer to [AMF] Level five. This grievance is being written to bring cause into my detention. And a question of ***why for the significant increase in my custody level? From being a level four prisoner, now a level five prisoner without being afforded Due Process***, or a custody hearing via SCC "Security Classification Committee." This grievance is being submitted against SCC Board Member Deputy Warden, D. Smith, who[] has sole jurisdiction, and control over J-unit level four prisoners at [JCF]. JCF accepted me from a random pool selection from (DRF) Caron atty in August of 2016 knowingly [sic] that I have 25 points, and documentation stating that I can be managed in a level four security setting. ***My cause*** is that ***I have not been issued any class one misconducts*** being written against me for bad behavior[] of ***which could give rise to a security level increase***; Again I have not received any class one misconducts from the time of my arrival to JCF (August 2016) to my departure from JCF on Thursday 4/20/2017. I believe the grievances against Deputy Smith in which I was well within my right to grieve issues that is not needless, cumulative, or a waste of time. Please explain the reason ***for my security level increase***.

(ECF No. 46-3, PageID.646) (emphasis added).

10

Even liberally construed, a fair reading of the 1087 Grievance at Step I shows that it raised issues about Thomas-El's "security level increase," rather than issues about an alleged prolonged and indefinite placement in administrative segregation. As explained above, though, those are discreet claims, and the Sixth Circuit upheld the dismissal of Thomas-El's "security reclassification" claim, and remanded only Thomas-El's "claim that his prolonged and indefinite placement in administrative segregation is atypical and significant so as to confer upon him a liberty interest." (ECF No. 247, PageID.3775). Thus, the 1087 Grievance did not exhaust the sole claim that remains before this Court.

Nowhere on the face of the 1087 Grievance is there a mention of or reference to "segregation." Nor could Thomas-El have complained about a "prolonged and indefinite" placement in administrative segregation at AMF at the time he filed his grievance on April 22, 2017, because it is undisputed that he did not arrive at AMF until *two days later* on April 24, 2017.[4] In other words, Thomas-El could not have properly grieved through the 1087 Grievance an incident that had not yet occurred, much less that such incident lasted for a "prolonged and indefinite" duration as he alleges in his complaint, which was a necessary element to state a sufficient due process claim related to his placement in

---

[4] A review of Thomas-El's lock history reflects that he was placed in "Detention (Punitive Segregation)" at the Chippewa Correctional Facility on April 20, 2017, until he was transferred to "General Population Custody Level 5" at AMF on April 24, 2017. (ECF No. 204-2, PageID.3096). Thomas-El was then subsequently placed in "Administrative Segregation" on April 25, 2017, where he stayed for a little over one year until he was placed back into "General Population Custody Level 5" from May 3, 2018 to December 16, 2018. (*Id.*).

11

administrative segregation.[5]  *See Joseph*, 410 F. App'x at 868; *Harden-Bey v. Rutter*, 524 F.3d at 794-95.

Indeed, a review of Thomas-El's Step II and III appeals of the 1087 Grievance corroborates that his grievance challenged the increase in his security level without a hearing, and that such increase was retaliatory. Specifically, his Step II appeal states:

---

[5] To the extent Thomas-El argues that his placement in administrative segregation is itself sufficient to raise a due process claim, the law makes clear that confinement in segregation generally does not constitute an "atypical and significant" hardship:

> Likewise, the Sixth Circuit has often held that administrative segregation alone does not involve an "atypical and significant" hardship implicating a protected liberty interest. *See e.g., Jones* [*v. Baker*], 155 F.3d [810,] 812–13 [(6th Cir. 1998)] (collecting cases that stand for that proposition); *Rimmer–Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir.1995) (holding a Michigan prisoner's complaint about his placement in administrative segregation without a hearing did not rise to the level of an "atypical and significant hardship"). In this circuit, we have held that the prisoner presented a § 1983 claim alleging that placement in administrative segregation is "atypical and significant in relation to the ordinary incidents of prison life" in extreme circumstances, such as when the prisoner's complaint alleged that he is subject to indefinite administrative segregation. *Harden–Bey*, 524 F.3d at 795.
>
> . . . Simply disagreeing with being placed in administrative segregation does not make it "atypical and significant." *Harden–Bey*, 524 F.3d at 796 ("[C]onclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim" under § 1983.). Furthermore, even assuming Joseph was correct that Michigan administrative rules required a hearing prior to placement in administrative segregation, such a regulation would not create a liberty interest even if the regulation incorporates "language of an unmistakably mandatory character." *Sandin*, 515 U.S. at 480, 115 S.Ct. 2293; *Rimmer–Bey*, 62 F.3d at 790–91 (holding there was no liberty interest even if Michigan prison regulations contained mandatory language providing an administrative hearing before placement in administrative segregation).

*Joseph*, 410 F. App'x at 868. In other words, a challenge to his mere placement in segregation would have been insufficient to state a due process claim. Rather, as Thomas-El alleged in his amended complaint, a due process claim premised on administrative segregation sufficient to survive dismissal must allege an "extreme circumstance" of being *indefinitely* placed in segregation such that it created an atypical and significant hardship, which he clearly did not allege in the 1087 Grievance.

> My Grievance has been written on account that JCF refused me an S.C.C. hearing *regarding my security level increase* seeing that and knowing I had not received any class one misconducts during the entire duration of my stay at JCF and I believe I should have been giv[en] an S.C.C. hearing because it can be shown that I am a manag[e]able prisoner within a level four security setting with the approval of Deputy Douglas Smith who[] has sole jurisdiction over level four J-unit prisoners. *My security level increase was done in retaliation* for bring[ing] to light my differences with staff because I had given staff no reason to see me as a security concern.

(ECF No. 46-3, PageID.644) (emphasis added). Similarly, his Step III appeal states:

> I filed my Step II appeal immediately when I received it on June 13, 2017 the untimel[i]ness is not on my part either correctional staff withheld or set aside my Step III appeal in order to intentionally delay or deny it this issue should have been with Shawn Brewer not Anthony Stewart. My Step III appeal is being filed because I can't get a straight and forward answer to *why my security level had been increased without me being afforded a hearing* with S.C.C. the Security Classification Committee.

(*Id.*) (emphasis added). Thus, as with Thomas-El's Step I 1087 Grievance, his Step II and III appeals of that grievance simply do not address his placement in administrative segregation, much less that he was placed in segregation for a "prolonged and indefinite" amount of time such that it constituted an atypical and significant hardship.

In sum, the 1087 Grievance complains about a "transfer" to "Bar[a]ga Correctional Facility Level five," and a "significant increase in [Thomas-El's] custody level" from level four to level five "without being afforded Due Process, or a custody hearing via SCC 'Security Classification Committee.'" (ECF No. 46-3, PageID.646). However, as the Sixth Circuit made clear, Thomas-El "failed to state a due process claim premised on his *transfer*, *security reclassification*, *and state policies*, and so those portions of his due process claim were *properly dismissed*." (ECF No. 247, PageID.3775) (emphasis added).

13

Thus, while Thomas-El may have sufficiently alleged *in his amended complaint* a due process claim premised on his indefinite and prolonged placement in administrative segregation, the evidence makes clear that he did not grieve such a claim *in the 1087 Grievance*, as he was required to do under the MDOC's grievance process.

For all of these reasons, Thomas-El has not established a genuine issue of material fact that he properly grieved a due process claim based on an indefinite and prolonged placement in administrative segregation. Accordingly, Defendants' motion for summary judgment on exhaustion grounds (ECF No. 255) should be granted.

### III.    CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 255)** be **GRANTED**.

Dated: October 16, 2024         s/David R. Grand
Ann Arbor, Michigan             DAVID R. GRAND
                                United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the

objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 16, 2024.

                                                s/Eddrey O. Butts
                                                EDDREY O. BUTTS
                                                Case Manager